PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 1/6/97**

TENTH CIRCUIT

THE AUDUBON SOCIETY, a non-profit
Arizona corporation (Maricopa County);
ROBIN SILVER, an individual,

     Plaintiffs - Appellees,

vs.

No. 95-2210

UNITED STATES FOREST SERVICE,

     Defendant - Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-94-1244-JP)

Matthew Kenna, Kenna & Associates, Durango, Colorado, for Plaintiffs-Appellees.

John P. Schnitker (Leonard Schaitman with him on the brief), Attorneys, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Defendant-Appellant.

Before KELLY, HOLLOWAY and WEIS,[*] Circuit Judges.

KELLY, Circuit Judge.

---

  [*] Hon. Joseph F. Weis, Jr., Senior United States Circuit Judge, U.S. Court of Appeals-Third Circuit, sitting by designation.

The Forest Service appeals from a grant of summary judgment in favor of Plaintiffs Maricopa County Audubon Society and Robin Silver. Plaintiffs filed this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking disclosure of Forest Service maps which identify Mexican spotted owl nest sites. The district court granted summary judgment in their favor and ordered the Forest Service to release the maps, holding that they are not exempt from disclosure. Maricopa Audobon Society v. United States Forest Serv., 923 F. Supp. 1436, 1441-42 (D.N.M. 1995). Contra Maricopa Audubon Society v. United States Forest Serv., No. CV 94-1129, (D. Ariz., transcript filed Nov. 13, 1995) (transcript of Aug. 7, 1995 oral ruling granting summary judgment in favor of government), appeal pending, No. 95-16919 (9th Cir.). Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.


Background

The Forest Service is responsible in part for protection of fish and wildlife on national forest system lands. Accordingly, the Forest Service has prepared "management territory maps" to assist in protecting the Mexican spotted owl, which has been listed as "threatened" under the Endangered Species Act, 16 U.S.C. §§ 1531-1544; 50 C.F.R. § 17.11 (1995). The maps identify specific owl nest sites in national forest system lands throughout New Mexico and Arizona.

In June 1994, Plaintiffs requested the maps from the Forest Service under FOIA.

- 2 -

The Forest Service denied the request, claiming that the maps could be withheld from the public under Exemption 2 of FOIA, which permits the government to withhold information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Plaintiff then filed this action in district court. In opposing summary judgment, the Forest Service claimed that under the broad construction of Exemption 2 adopted in some circuits—otherwise known as the "high 2" interpretation, see Schiller v. N.L.R.B., 964 F.2d 1205, 1207 (D.C. Cir. 1992) (citing Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc))—the maps should be withheld because they fall within the statutory language, and their release would make it easier to find and harm the owls, thereby creating a risk of circumvention of the Endangered Species Act.

The district court declined to adopt the "high 2" interpretation, holding that even under that broad construction, the maps do not fit within the language of the exemption. However, to ensure the protection of the owls, the court required Plaintiffs to enter into a confidentiality agreement with the Forest Service not to reveal the maps to anyone not named in the agreement. The court noted that the agreement would not prevent the Forest Service from disclosing the management territory maps to others who submit proper FOIA requests.

Discussion

In FOIA cases, the standard of review of a grant of summary judgment is de novo, if the district court's decision had an adequate factual basis. Sheet Metal Workers Local No. 9 v. United States Air Force, 63 F.3d 994, 997 (10th Cir. 1995). Neither party claims that the district court lacked an adequate factual basis. Our review is therefore de novo.

## A. Exemption 2

FOIA generally provides that the public has a right of access, enforceable in court, to federal agency records. See Anderson v. Department of Health & Human Servs., 907 F.2d 936, 941 (10th Cir. 1990). FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed. Id. The federal agency resisting disclosure bears the burden of justifying nondisclosure. Id.

FOIA does not require disclosure, however, of all government documents, but permits access "only to information that sheds light upon the government's performance of its duties." Sheet Metal Workers, 63 F.3d at 996. Accordingly, FOIA contains nine specific exemptions from disclosure. In this case, the Forest Service claims that its owl maps fit under Exemption 2, which permits withholding of information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).

The Forest Service urges us to adopt the "high 2" interpretation of Exemption 2, and renews its argument that the owl maps are exempt from disclosure. Under the "high 2" approach, adopted in four circuits, government information is exempted if: (1) the

information falls within the language of the exemption—that is, it relates to the "internal personnel rules and practices" of the agency and is "predominantly internal"; and (2) its disclosure would risk circumvention of federal statutes or regulations. Crooker, 670 F.2d at 1074; Schwaner v. Department of Air Force, 898 F.2d 793, 794 (D.C. Cir. 1990).[2] The Forest Service argues vigorously that release of the maps under FOIA risks circumvention of the Endangered Species Act.

Before we reach the circumvention prong of a high 2 analysis, however, we must initially determine whether the maps "fall within the terms of the statutory language." Schwaner, 898 F.2d at 794 (quoting Founding Church of Scientology v. Smith, 721 F.2d 828, 830 n.4 (D.C. Cir. 1983)). The Forest Service argues that the maps are related to agency practices because they assist Forest Service personnel in their management duties. We note first that the Forest Service errs by referring to "agency practices." The phrase "internal personnel rules" and "practices of an agency" should not be read disjunctively; "internal personnel" modifies both "rules" and "practices." See Jordan v. United States Dep't of Justice, 591 F.2d 753, 764 (D.C. Cir. 1978). The predecessor of Exemption 2 allowed the withholding of "any matter relating solely to the internal management of an

---

[2] In addition to the District of Columbia Circuit, the "high 2" approach has been adopted by the Second Circuit, Caplan v. Bureau of Alcohol, Tobacco & Firearms, 587 F.2d 544, 547 (2d Cir. 1978); the Seventh Circuit, Kaganove v. Environmental Protection Agency, 856 F.2d 884, 889 (7th Cir. 1988), cert. denied, 488 U.S. 1011 (1989); and the Ninth Circuit, Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653, 656 (9th Cir. 1980).

agency," 5 U.S.C. § 1002 (1964), quoted in Jordan, 591 F.2d at 764, which in Congress'

judgment was far too broad. Thus, Congress enacted the new Exemption 2 to narrow the

"internal management" exemption. See H.R. Rep. No. 89-1497 (1966), reprinted in 1966

U.S.C.C.A.N. 2418, 2422-23. Therefore, the proper inquiry is not whether the owl maps

relate to the "agency practices," but whether they relate to the "personnel practices" of the

Forest Service.

It stretches the language of the exemption too far to conclude that owl maps

"relate" to personnel practices of the Forest Service. The Forest Service's argument

raises the concern expressed in Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir. 1975):

> In some attenuated sense, virtually everything that goes on in the Federal
> Government, and much that goes on outside of it, could be said to be "related"
> through some chain of circumstances to the "internal personnel rules and practices
> of an agency." The potentially all-encompassing sweep of a broad exemption of
> this type [would] undercut[] the vitality of any such approach.

Id. at 1150 (Leventhal, J., concurring). The Forest Service's argument would give the

exemption an "all-encompassing sweep" that would cover virtually all material published

by the Forest Service. We agree with the district court that even if we were to adopt the

high 2 analysis, the maps are not sufficiently "related to internal personnel rules and

practices" and would therefore fail the first prong. Thus, we need not address the Forest

Service's argument that disclosure of the maps risks circumvention of the Endangered

Species Act.

The Forest Service also argues that because the maps do not embody "secret law,"

it has no obligation to disclose them. The Ninth Circuit has noted that the primary target of FOIA is "secret law"—that is, information withheld from the public which defines the legal standards by which the public's conduct is regulated. Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653, 657 (9th Cir. 1980). We agree with the Forest Service that if the requested material is "secret law," it must be disclosed. However, this does not mean that the converse is also true. As the Supreme Court has said, "[E]xemption [2] was not designed to authorize withholding of all matters except . . . secret law . . . . Rather, the general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976).

### B. The Confidentiality Agreement

The district court ordered Plaintiffs to enter a confidentiality agreement, but specifically stated that the agreement would not affect others who submit proper FOIA requests. We question whether imposing such a condition upon the grant of a FOIA request is consistent with the purposes of FOIA. However, Plaintiffs have not challenged the confidentiality agreement, and in fact have indicated that they have been willing to enter such an agreement all along. We therefore decline to address the issue. See Home & Family, Inc. v. England Resources Corp. (In re Home & Family, Inc.), 85 F.3d 478,

481 (10th Cir. 1996) ("We are mindful of our duty to refrain from . . . declar[ing] principles or rules of law which cannot affect the matter in issue.") (citing Church of Scientology v. United States, 506 U.S. 9, 12 (1992)).

AFFIRMED.